UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH HARVEY COTTENHAM,

                Petitioner,                  Case Number 2:09-CV-13382
                                                    Honorable Lawrence P. Zatkoff

v.

BLAINE LAFLER,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner Ralph Harvey Cottenham's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner is serving a 15-to-30 year sentence for his Saginaw Circuit Court conviction for assault with intent to commit murder, MICH. COMP. LAWS 750.83, and a concurrent 60-to-90 months sentence for his conviction of carrying a dangerous weapon with unlawful intent. MICH. COMP. LAWS 750.226. The petition raises eleven claims. Because the Court finds that each of the claims is without merit, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

### I. Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The essential facts are not in dispute. On the night of November 17, 1997, at approximately 11:00 p.m., defendant called Robert John Rondo. Defendant had two children with Rondo's daughter, Diane, with whom he had been in a previous

relationship. Defendant told Rondo to give his children a hug and a kiss and tell them he loved them. He also stated "you will not hear from me no more," before hanging up the phone. Rondo testified that he could detect that defendant had been drinking because he slurred "a couple words" but also testified that defendant "definitely was talking plain and he understood me."

Shortly thereafter, around 12:30 a.m. on November 18, 1997, defendant unexpectedly showed up at Jodi Johnson's place of work, Frankenmuth Care Center. Defendant and Johnson had been dating, but Johnson had recently broken up with defendant because she had decided to go back to her husband. Defendant went inside and proceeded to the west hall where Johnson worked. Defendant found Johnson and asked her to come outside because he wanted to talk to her. The two went outside to talk. Initially they stayed near the entrance double doors but Johnson's cigarette lighter did not work so they walked into the parking lot to defendant's car. While in the parking lot, Johnson smelled alcohol on defendant's breath.

Defendant asked Johnson why she left him. Johnson did not reply. Johnson testified at trial that defendant said "it [is] time for you to die," and pulled a knife from his jacket pocket. Johnson described the knife as "fat." Johnson tried to run away, but defendant tackled her from behind. Defendant stabbed Johnson three times, once in the side of her cheek, once in her neck, and once in the side of her eye. During the stabbing, Johnson was screaming and attempting to fight back. Defendant said something to Johnson about blood. A coworker of Johnson, Sandra Conway, witnessed the attack through the building's double doors. Conway saw defendant with an object in his hand strike Johnson four or five times about her head. Conway told another coworker to call 911 and then ran out of the building yelling. Conway watched defendant get up and run to his car without difficulty. Conway threw a brick at defendant as he jumped in his car in an attempt to dissuade him from coming back. Defendant started his car and drove out of the parking lot. Johnson's coworkers took her back into the building while they awaited the paramedics and the Frankenmuth Police Department. Johnson was taken to St. Mary's Hospital where she received medical attention for her wounds. Johnson was unable to see out of her right eye for three months and only regained 85% of her vision in that eye.

Between 1:00 a.m. and 1:30 a.m. later that same night, defendant called his friend Byron Robinson. Defendant stated that his car was broken down and wanted assistance in trying to get his car working or a ride home. Robinson obliged and met defendant. Robinson stated that he had been drinking with defendant in the late afternoon the previous day, he could smell alcohol on defendant when he arrived, and, in his opinion, defendant was drunk. The two were unable to repair defendant's car and Robinson drove defendant home. Robinson testified that, during their conversation on the ride home, defendant referred to Johnson stating, "I didn't mean it or something, and he said something about screwing her up . . . ."

After dropping defendant off, Robinson approached a uniformed Buena Vista police officer, James Edward Baker, while he was on a traffic stop. Robinson asked Baker if there was an all points bulletin out on anyone or if anyone had been hurt in Frankenmuth, and the officer responded in the negative. Baker testified at trial that Robinson told him that defendant had, "bragged that he had beaten up his girlfriend[.]" Baker located defendant's vehicle and had it impounded. Blood stains were found on the steering wheel and in other locations in defendant's vehicle. The police never attempted to match the blood stain evidence to any individuals. Police also found an empty twelve ounce beer can in the vehicle. Police arrested defendant at his home.

By the time of trial, defendant and Johnson had become engaged to one another and Johnson had since given birth to their child. Defendant's theory of the case was that he lacked the specific intent to commit murder.

*People v. Cottenham*, 2009 Mich. App. LEXIS 631, *3-7 (Mich. Ct. App. Mar. 19, 2009).

Following his conviction and sentence, Petitioner moved for the appointment of appellate counsel. The trial court appointed an attorney from the State Appellate Defender's Office to represent him. Petitioner's parents, without his knowledge, also retained Petitioner's trial counsel to pursue an appeal of right. The attorneys conferred, and Petitioner's trial attorney proceeded with the appeal and filed an appellate brief.

Petitioner did not wish to have his trial attorney represent him on appeal. Petitioner filed a motion in the Michigan Court of Appeals stating that he had not retained his trial attorney, that his parents had done so without his permission, and that he wished to raise claims of ineffective assistance of trial counsel. The state appellate court refused to rule on this pro se motion because, ironically, Petitioner was represented by retained counsel. The court also refused to accept Petitioner's pro se supplemental brief for the same reason. After repeated attempts, Petitioner was finally able to have a new attorney appointed to represent him on appeal. His new attorney, however, was not given adequate time to file a new appellate brief prior to a cut-off time set by the court. The Michigan Court of Appeals subsequently affirmed Petitioner's conviction in an

unpublished opinion, addressing the claims raised in his trial counsel's appellate brief. *People v. Cottenham*, No. 214353 (Mich. Ct. App. December 14, 1999). On August 22, 2000, the Michigan Supreme Court denied Petitioner's leave to appeal in a standard order. *People v. Cottenham*, 463 Mich. 854 (2000) (table).

After an unsuccessful round of state collateral review, Petitioner then filed a petition for habeas corpus relief in this Court raising fifteen claims. It was denied on the grounds that most of Petitioner's claims were procedurally defaulted and the others were without merit. *Cottenham v. Jamrog*, No. 02-CV-74643 (E.D.M.I. filed November 21, 2002) (O'Meara, J.). Petitioner appealed, and the Sixth Circuit reversed. The Court found that Petitioner was denied the right to appeal the issues of his choice when he was denied his choice of counsel during his appeal of right. The case was remanded with instructions to grant a writ of habeas corpus conditioned on Petitioner receiving a new appeal of right in the state courts. *Cottenham v. Jamrog*, 248 Fed. Appx. 625, 636 (6th Cir. 2007).

The state complied with the conditional writ, and it appointed Petitioner appellate counsel. Petitioner's new appointed counsel filed a motion for a new trial and an evidentiary hearing to make a record for his ineffective assistance of trial counsel claim. The motion for new trial also asserted that insufficient evidence was presented at trial and that the verdict was against the great weight of the evidence. After holding an evidentiary hearing, the trial court denied the motion for a new trial because Petitioner's claims lacked merit.

Petitioner appealed this decision to the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. The Defendant's convictions should be overturned because there was insufficient credible evidence at trial to prove the Defendant guilty of the crimes.

II. The Defendant's convictions must be reversed because they are against the great weight of the evidence or involve a miscarriage of justice.

III. The trial court denied the Defendant a fair trial and his due process rights by giving incomplete instructions; erring in his evidentiary rulings by allowing irrelevant and unfairly prejudicial evidence before the jury; by failing to control the prosecuting attorney; and by failing to grant the Defendant's motion for a new trial.

IV. The prosecutor's actions denied the Defendant a fair trial and his due process rights under the Michigan and Federal constitutions.

V. The Defendant received ineffective assistance of trial and prior appellate counsel.

Petitioner also filed a pro se brief in the Michigan Court of Appeals and raised the following additional arguments:

VI. Defendant's sentences of 15 to 30 years for assault with intent to murder, and 5 to 7 ½ years for carrying a dangerous weapon with unlawful intent, both enhanced pursuant to the 2nd habitual offender statute, are disproportionate to this offense and this offender and an abuse of sentencing discretion. US Const Am's V, VIII, XIV, Mich Const 1963, Art I, Sec 17.

VII. Defendant was denied his state and federal constitutional right to effective assistance of counsel where counsel failed to disclose the personal bias interest witness Sandra Conway had in the outcome of the trial and failure to disclose these factors denied Defendant a fair trial.

VIII. Defendant was denied effective assistance of trial counsel without due process of the law, where counsel abandoned his client and diminished capacity defense, thus, violating Defendant's Sixth and Fourteenth Amendment rights under the United States Constitution, and the Michigan Constitution of 1963, Art I, Sec 17, 20.

IX. Defendant was denied a fair and impartial jury trial; a meaningful first appeal of right, requiring at minimum the opportunity to enter into reasonable plea negotiations.

X. Defendant was denied the effective assistance of appellate counsel where counsel failed to raise the multiple meritorious issues identified, raised and argued within arguments six through ten in this writ of habeas corpus that would protect his state created rights.

XI. Defendant was denied his constitutional rights to due process and a fair trial by

the cumulative effect of error, committed by the trial court, prosecution, trial and appellate counsel, thus, his Sixth and Fourteenth Amendment rights of the United States Constitution and the Michigan Constitution of 1963, Art 1, Sec 17, 20, have been violated.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Cottenham*, 2009 Mich. App. LEXIS 631, *3-7 (Mich. Ct. App. Mar. 19, 2009). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he asserted in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because the Court was not persuaded that the questions presented should be reviewed. *People v. Cottenham*, 483 Mich. 1115 (2009)(table).

Petitioner than filed the instant petition, raising the same eleven claims he presented to the state courts in his renewed appeal of right.[1]

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1]

Because Petitioner's first petition resulted in a grant of habeas relief, he was not required to file a motion for authorization in the Sixth Circuit to file this second habeas petition. *Storey v. Vasbinder*, 657 F.3d 372, 378 (6th Cir. 2011) ("[A] petition filed after a remedial appeal, ordered in response to an earlier petition, is not second or successive within the meaning of § 2244(b)—even if it includes claims that could have been included, but were not, in the first petition.").

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id. (citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories

supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (*citing Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-787.

### III. Analysis

#### A. Sufficiency of the Evidence

Petitioner's first claim asserts that the evidence was insufficient to support his conviction for assault with intent to commit murder. Specifically, he argues that he never told the victim that "it's time to die." He claims that two of the key prosecution witnesses, Conway and Rondo, were biased against him. He also argues that he was intoxicated at the time of the assault, and that he stopped stabbing the victim on his own before she was dead. For the following reasons, the Court concludes

that the Michigan Court of Appeals reasonably rejected this claim on the merits, and relief is therefore barred by § 2254(d).

The clearly established Supreme Court standard for deciding sufficiency-of-the-evidence claims asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. "The elements of assault with intent to commit murder are '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *People v. Brown*, 267 Mich. App. 141, 147-148 (2005).

Petitioner's argument that he never told the victim that "it's time to die" is not a legitimate attack on the sufficiency of the evidence. The victim testified that when Petitioner took her back to his car that he told her it was time for her to die. Petitioner claims that he never said those words, but the reviewing court must view the evidence most favorably to the prosecution and assume the jury resolved credibility disputes in favor of the prosecution. *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also, United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). The same holds true for many of Petitioner's other challenges. The jury was free to accept Conway and Rondo's testimony as truthful despite Petitioner's assertion that they were biased. Likewise, Petitioner asserts that he was intoxicated to the point that he could not develop an intent to kill, but the jury was free to credit the victim's and officers' testimony that Petitioner did not appear to be affected by alcohol.

The fact that Petitioner stopped stabbing the victim on his own and that her wounds were not life-threatening does not necessarily mean that he did not intend to kill her. Petitioner stabbed her three times in the head and neck area. As the state appellate court noted, one of the stab wounds was located within an inch of the victim's jugular vein. Even under de novo review, the evidence presented at Petitioner's trial was sufficient to show that he acted with an intent to murder. Accordingly, relief is barred by §2254(d).

## B. Great Weight of the Evidence

Petitioner next claims that the trial court erred when it failed to grant him a new trial because the verdict was against the great weight of the evidence.

The contention that the conviction was against the weight of the evidence is a state-law argument, and a federal habeas court is only allowed to review issues of federal law. *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). Thus, the weight-of-the-evidence claim is not cognizable on habeas corpus review.

## C. Trial Court Rulings

Petitioner's third claim challenges a number of the trial court's rulings. He asserts that several evidentiary rulings were incorrect, that incomplete jury instructions were given, and that the trial court failed to control the prosecutor. These challenges are not cognizable in this action.

Petitioner first asserts that he was prevented from eliciting testimony from the victim as to whether she thought Petitioner intended to kill her. The state appellate court found that the question was not worded to elicit lay opinion testimony under Michigan Rule of Evidence 701 and 704, but it called for an issue to be decided by the jury. Petitioner also argues that the trial court improperly allowed testimony from emergency medical responders regarding the location of the wounds and

how close they were to being life threatening.  The state appellate court found the evidence was properly admitted under Michigan Rule of Evidence 403 because it tended to show that the victim did not survive because Petitioner wounded her in a non-critical area, but rather she survived out of sheer luck that the wounds did not penetrate nearby important blood vessels.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F. 3d 363, 370 (6th Cir. 1994).  There was nothing fundamentally unfair about the trial court's run-of-the-mill evidentiary ruling based on its own interpretation of state evidentiary law.  The claims do not present cognizable grounds for habeas relief.

Petitioner next asserts that the trial court failed to instruct the jury that the admission of prior inconsistent statements by the victim could only be used for impeachment purposes.  This claim is not well-taken.  Such a limiting instruction was read to the jury.  Finally, Petitioner claims that the trial court: (a) failed to grant his motion for a new trial due to the great weight of the evidence, and (b) did not control the conduct of the prosecutor.  These claims are dealt with in Sections III.B. and III.D. of this Opinion, respectively.

### D.  Prosecutorial Misconduct

Petitioner asserts in his fourth claim that the prosecutor committed misconduct.  He argues that the prosecutor: (1) improperly elicited evidence that the victim was married when he dated her

and that he had illegitimate children, (2) elicited evidence that Petitioner told Rondo to hug his kids for him because they would not hear from him anymore, (3) misstated the law with respect to his voluntary intoxication defense, (4) blurred the concepts of general and specific intent, and (5) improperly asked Petitioner on cross-examination why Petitioner did not present any co-workers or the victim's mother to corroborate his testimony.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, the Supreme Court has clearly indicated that the state courts should be given a great amount of discretion when adjudicating prosecutorial misconduct claims "because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). None of Petitioner's allegations of prosecutorial misconduct have merit under this standard.

The prosecutor did not commit misconduct by eliciting irrelevant testimony. The prosecutor's theory of the case was that Petitioner attacked the victim with the intent to kill her because she decided to break-off a romantic relationship with Petitioner and return to her husband. Evidence that the victim was, in fact, married was highly relevant to establish Petitioner's motive.

-12-

The prosecutor also elicited testimony from Rondo that Petitioner called him and told him to hug his children because he would not see them again. This testimony was relevant because it tended to show Petitioner's awareness of the severity of his intended actions and, as such, was highly relevant to the issue of Petitioner's intent. The fact that the children were illegitimate was only briefly mentioned and was relevant to show Petitioner's close relationship with Rondo.

Next, Petitioner asserts that the prosecutor misstated the law with respect to voluntary intoxication and general versus specific intent. This allegation is not supported by the record. The prosecutor argued that even if the jury believed that Petitioner was intoxicated at the time of the assault, it did not necessarily mean that he was unable to form an intent to murder. More importantly, the prosecutor cautioned the jury to listen carefully to the judge's instructions in setting forth the applicable law. Conversely, the trial court instructed the jury that if counsel made a statement about the law that was different from the court's instructions to the jury, that they should follow the court's instructions. Juries are presumed to follow the court's instructions and nothing in the prosecutor's argument was so inflammatory as to overcome this presumption. *See United States v. Powell*, 469 U.S. 57, 66 (1984).

Finally, Petitioner asserts that the prosecutor improperly asked Petitioner during cross-examination whether the victim's mother and Petitioner's co-worker would testify for the defense. Petitioner testified in  his own defense that on the day in question he was intoxicated but he remembered being with a co-worker and being at the victim's mother's house. On cross-examination, the prosecutor asked if theses people would appear at trial to corroborate his story. This line of questioning was not improper. Nothing prevents the prosecution from commenting on the failure of the defense to call other witnesses, particularly where the defendant testifies or argues

that such witnesses exist and suggests that, had they been called, they could have offered exculpatory testimony. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000); *United States v. Snow*, 552 F.2d 165, 168 (6th Cir.1977).

Accordingly, all of Petitioner's allegations of prosecutorial misconduct are without merit and do not warrant a grant of habeas corpus relief.

### E. Ineffective Assistance of Counsel

Petitioner's fifth claim asserts that he was denied the effective assistance of counsel. The Court can identify seven different allegations: (1) counsel failed to use all his peremptory challenges during jury selection; (2) counsel failed to call Tommy Reese or Petitioner's mother at trial; (3) counsel failed to move to suppress Rondo's statement; (4) counsel failed to move to suppress the victim's testimony that Petitioner said "it's time to die;" (5) counsel failed to raise a defense that the victim had the knife first; (6) counsel failed to object to prosecutorial misconduct; and (7) counsel failed to adequately cross-examine the witnesses who testified about the victim's injuries.

The Michigan Court of Appeals fully and reasonably rejected these claims as follows:

> Defendant contends that he received ineffective assistance of counsel at trial due to various errors. Following an evidentiary hearing pursuant to *Ginther, supra*, the trial court denied defendant's motion for a new trial. We review the trial court's factual findings for clear error, and the ineffective assistance question de novo. *People v. Dendel*, 481 Mich. 114, 124 (2008), amended on other grounds 481 Mich. 1201 (2008). Clear error is established when, although there is evidence to support a finding, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id*. at 130.

> In *Dendel, supra* at 124-125, quoting *People v. Carbin*, 463 Mich 590, 599-600 (2001), our Supreme Court stated: A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden. To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See People v. Pickens*, 446 Mich. 298, 302-303

(1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, *supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id*. at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. *See People v. Hoag*, 460 Mich. 1, 6 (1999).

A.

Defendant argues that because defense counsel failed to use all of his peremptory challenges during voir dire he caused the forfeiture of an essential argument on appeal which amounted to ineffective assistance of counsel. At trial at the beginning of voir dire, the following occurred:

> The Court: Now, I'm going to ask you if you know either the attorney or any of the witnesses I've named here. If you do, would you raise your hand and we'll recognize you. And if you will give us a minute to get your number because we have to get that.

> We'll start in the back. The lady back there, your name, ma'am?

> Juror: Michele Bruske.

> The Clerk: That would be number 530.

> The Court: And who do you know, ma'am?

> Juror: The -- Ralph.

> The Court: I have a little hearing --

> Juror: Ralph, the defendant.

> The Court: How do you know Mr. Cottenham?

> Juror: He had a run-in with my boyfriend. He broke out the windshield of my car.

-15-

The Court: I'll excuse you from this then.

Regarding this exchange, in his previous appeal, defendant argued that the trial court abused its discretion by denying his challenge to the jury array. This Court analyzed the issue and held that defendant's failure to exhaust all of his peremptory challenges at trial constituted a forfeiture of this issue on appeal, stating as follows:

> Defendant first argues that the trial court abused its discretion by denying his challenge to the jury array after a prospective juror declared that defendant had broken the windshield of her car and "had a run-in" with her boyfriend. Although the trial court immediately excused this prospective juror, defendant argued that the entire array was contaminated by her comment. The trial court offered to give a curative instruction to the jury that it was not to consider any comments of prospective jurors as evidence. Defendant refused, choosing instead to not mention the comment further to the jury array. Defendant did not ask any prospective jurors whether the comment would affect their ability to impartially consider the evidence of the case, and he only exercised eight of his twelve peremptory challenges. At the close of voir dire, defendant expressed his satisfaction with the jury. Under these circumstances, we conclude that defendant has forfeited his challenge to the jury array.

> A party forfeits a challenge to jury composition where that party fails to exhaust all of the available peremptory challenges. *People v. Rose*, 268 Mich. 529, 531 (1934); *People v. Hubbard (After Remand)*, 217 Mich. App. 459, 467 (1996). An exception exists where the exercise of all peremptory challenges would be unintelligent and pointless. *Hubbard, supra* at 467; *People v. Taylor*, 195 Mich. App. 57, 60 (1992). "A peremptory challenge is exercised unintelligently and pointlessly when the exercise would not prevent error, eliminate its prejudice, or further demonstrate the error and its prejudice." *Hubbard, supra* at 467-468. In this case, defendant could have questioned prospective jurors regarding their reaction to the comment at issue and then exercised peremptory challenges if he was not completely satisfied that all the jurors would be impartial. Also, defendant refused the trial court's offer of a curative instruction. Defendant failed to attempt to eliminate the prejudicial effect of the comment or to further demonstrate its prejudice. Exhaustion of defendant's peremptory challenges would not have been unintelligent or pointless. Therefore, defendant's failure to exhaust all of his peremptory challenges constitutes a forfeiture of this issue on appeal.

[*Cottenham I, supra* at slip pp *1-2.]

In the instant case, defendant asserts that his trial counsel's failure to use all of his peremptory challenges amounted to ineffective assistance of counsel at trial. "[A]n attorney's decisions relating to the selection of jurors generally involve matters of trial strategy." *People v. Johnson*, 245 Mich. App. 243, 259 (2001). The decision whether to challenge a juror for cause or to exercise a peremptory challenge is a matter of trial strategy that seldom rises to a level of ineffective assistance of counsel. *People v. Robinson*, 154 Mich. App. 92, 95 (1986). After reviewing the record it is clear that defense counsel made a strategic decision to move forward with the jury as assembled rather than gambling on a new jury created by removing four jurors for the sole reason of exhausting his remaining peremptory challenges. While apparently choosing not to exhaust the challenges hindered defendant on appeal, it was defendant's trial counsel's responsibility to best represent defendant at trial. This Court will not second-guess counsel in matters of trial strategy. *People v. Stewart*, 219 Mich. App. 38, 42 (1996). The fact that the strategy chosen did not work does not constitute ineffective assistance of counsel. *Id*. Defendant has not demonstrated error.

B.

Defendant next argues that at trial, defense counsel failed to call available witnesses in support of the defense of intoxication. Specifically, defendant notes that while his counsel did call Robinson who testified defendant had been drinking, there were at least two other witnesses who could corroborate the defense that were not called, Troy Reese, a coworker, and defendant's mother, Patsy Ishman. Defendant states in his brief on appeal that Reese would have testified that "on the day of the assault that he and the Defendant had been doing a lot of drinking." Defendant points to Ishman's testimony at the Ginther hearing that when police came to arrest defendant approximately four hours after the incident, he was so drunk that an officer had to hold defendant up while she put clothes on the defendant.

"The decision whether to call witnesses is a matter of trial strategy which can constitute ineffective assistance only when the failure to do so deprives the defendant of a substantial defense." *People v. Hoyt*, 185 Mich. App. 531, 537-538 (1990). Defendant has not demonstrated the he was deprived of the substantial defense of intoxication because his counsel did not call Reese or Ishman to testify at trial. Rondo testified that it was apparent to him that defendant had been drinking during defendant's telephone call that was only an hour or so before the attack. Johnson testified that defendant smelled alcohol on defendant and it was clear that he had been drinking. Robinson also testified that he had been drinking with defendant earlier in the day and also that defendant was drunk only an hour or so after the attack. Additionally, there was evidence that police found an empty beer can in defendant's car. And, defendant himself testified extensively about his drinking on the date of the incident. Because the evidence of drunkenness was presented at trial through other witnesses, Reese's and Ishman's testimony, neither of which was in

closer temporal proximity to the attack, would only have been cumulative. Thus, defense counsel's decision to rely on testimony that was closer in time to the incident was sound trial strategy and did not deprive defendant of a substantial defense. *Id*.

C.

Next, defendant argues that defense counsel's failure to move to suppress Rondo's statement about defendant's statements during the phone call amounted to ineffective assistance of counsel. As we concluded above in section V. A., defendant's telephone call to Rondo containing the message to defendant's children was relevant because it went straight to the issue of intent, namely his planning and awareness that the events about to take place could result in defendant not seeing his children again. While defendant argues other interpretations of the challenged statement, the ultimate determination was for the jury. And, we conclude that the evidence was more probative than prejudicial. Hence, trial counsel was not ineffective for failing to bring a futile motion to suppress. *People v. Thomas*, 260 Mich. App. 450, 457 (2004).

D.

Defendant also argues that defense counsel's failure to move to suppress the victim's statement to police that defendant said "it's time to die" to the victim during the attack, or, at least cross-examine the victim about the statement in light of her desire to recant her testimony, amounted to ineffective assistance of counsel. Defendant relies on contrary testimony provided by the victim in a post-trial affidavit as well as her testimony at the *Ginther* hearing that defendant never said "it's time to die." This issue was raised and addressed at the *Ginther* hearing where the trial court made the following factual findings:

> Having held an evidentiary hearing, and having opportunity to view the witnesses, the Court finds the testimony of the attorneys and officer to be credible and finds the testimony of Johnson, who had by then reconciled and become engaged to the Defendant, to be incredible and unreliable with regard to alleged attempts to recant. The Court finds the prosecutors were not engaged in activities to conceal and prevent Johnson from recanting. Nor does the Court find that defense counsel was told of a desire to change her testimony but instead opted not to use that information.

"Where newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v. Canter*, 197 Mich. App. 550, 559 (1992). In fact, the *Canter* Court observed that "[t]here is no form of proof so unreliable as recanting testimony." *Id*. at 559. With regard to defendant's ineffective assistance of counsel claim, the trial court determined that the

attorneys' testimony was more credible than Johnson's testimony regarding her desire to recant her testimony. Credibility determinations are crucial, and the trial court is in the best position to assess credibility. *People v. Daoud*, 462 Mich. 621, 629 (2000). With that in mind, we have reviewed the trial court's factual findings for clear error and found none. *Dendel, supra* at 124. And, after de novo review, we have concluded that trial counsel was not ineffective for failing to file a motion to suppress evidence, or ask questions during cross-examination regarding a subject of which he was not aware. *Id*. Defendant has not established error.

E.

Defendant argues that defense counsel's failure to object during voir dire and closing arguments to the prosecutor's misconduct with respect to his comments concerning the intoxication defense amounted to ineffective assistance of counsel. We determined in Section V. C. above that no error resulted from the prosecutor's statements and even if we were to assume that the prosecutor misstated the law during voir dire and closing arguments, the record reveals that the trial court properly instructed the jury regarding specific intent and jurors are presumed to follow instructions. McAlister, supra at 504. Defense counsel was not ineffective for failing to object to this matter at trial because no error existed. Trial counsel is not ineffective for failing to advocate a meritless position. *People v. Goodin*, 257 Mich. App. 425, 433 (2003).

F.

Finally, defendant argues that defense counsel's failure to cross-examine medical personnel about the effects of drugs the victim was given after the attack amounted to ineffective assistance of counsel. Specifically, defendant asserts that eliciting testimony regarding the side-effects of pain medication Johnson was given at the hospital may have discredited her initial account of the incident in her statement to police. Defendant has offered no medical basis whatsoever for this claim, and therefore, defendant has not met his burden of establishing the factual predicate for this claim. *See Hoag, supra* at 6. In any event, the record reveals that Johnson gave the same account of the incident at the preliminary examination long after she was discharged from the hospital as she did to police shortly after the incident. Therefore, attempts to discredit Johnson in the manner suggested would have been fruitless and defense counsel was not ineffective for not employing a futile strategy. *Goodin, supra* at 433.

*Cottenham*, 2009 Mich. App. LEXIS 631, *27-39.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, ___ U.S. ___, 130 S.Ct. 1473, 1485 (2010)(citations omitted). In *Harrington*, the Supreme Court

confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*.

Petitioner may disagree with the result reached by the state courts, but it is difficult to describe the state court's adjudication of his claim as anything other than reasonable under the standard announced in *Harrington*. The trial court held a hearing on the claim. Petitioner was permitted to, and did, call all witnesses he wished to at that hearing. The trial court then made findings of facts and conclusions of law–all of which were at least reasonably supported by the evidence presented at the hearing. Petitioner also was able to present the allegations to the state appellate court, which rendered a thorough opinion correctly stating the applicable constitutional standard and applying it to the facts of Petitioner's case in a reasonable manner. Petitioner's claim fails under § 2254(d).

### F. Proportionality of Sentence

Petitioner next asserts that his sentence is disproportionate to the severity of his offense. The claim is without merit. In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the U.S. Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence. The Eighth

Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Harmelin*, 501 U.S. at 1001.

Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). Federal courts will therefore not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *See Robinson v. Stegall*, 157 F. Supp. 2d at 823 (citing *United States v. Thomas*, 49 F. 3d 253, 260-61 (6th Cir. 1995)). A claim that a sentence is imposed in violation of Michigan's sentencing law does not state a claim for relief in a habeas proceeding where there is no claim that the sentence violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Id*. Therefore, Petitioner's claim that his sentence is disproportionate under Michigan law does not state a claim upon which habeas relief can be granted. *Whitfield v. Martin*, 157 F. Supp. 2d 758, 761 (E.D. Mich. 2001).

### G. Trial Counsel's Failure to Reveal Witness Bias

Petitioner's pro se supplemental brief filed in the Michigan Court of Appeals raised an additional claim of ineffective assistance of counsel regarding his trial attorney's failure to cross-examine Sandra Conway on her alleged personal dislike for Petitioner in an effort to attack her credibility.

Petitioner did not offer any evidence in support of this claim during his evidentiary hearing. As a result, the conclusion by the Michigan Court of Appeals that Petitioner did not meet his burden of demonstrating entitlement to relief was reasonable. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross*

*v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007). In any event, the decision not to question Conway about the reason she disliked Petitioner was a reasonable one for trial counsel to make. "There are . . . 'countless ways to provide effective assistance in any given case,'" and it is a rare situation "in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Strickland*, 466 U.S. at 689. If counsel had cross-examined Conway about whether she was biased against Petitioner, it most likely would have resulted in her testimony about why she disliked him–possibly damaging Petitioner in the eyes of the jury. This is exactly the type of tactical decision that is not assailable under the *Strickland* standard.

## H. Trial Counsel's Abandonment of Diminished Capacity Defense

Petitioner also claimed in his pro se brief filed in the state appellate court that his counsel was ineffective for failing to raise a diminished capacity defense, however, Michigan does not recognize a diminished capacity defense. Accordingly, Petitioner cannot show that his trial counsel was ineffective for failing to raise a defense not recognized by state law. *See, e.g., Jackson v. McKee*, 2011 U.S. Dist. LEXIS 2689, *19 ( E.D. Mich. Jan. 11, 2011).

## I. Denial of Opportunity to Enter into Plea Negotiations

Petitioner next claims that he was denied the right to enter into meaningful plea negotiations after he was granted a new appeal of right. The claim fails for two reasons. First, the Sixth Circuit did not condition the writ of habeas corpus on Petitioner receiving any of his pretrial rights. The writ was conditioned on him receiving a new appeal of right because that was the proceeding in which the constitutional violation occurred. Second,

there is no constitutional right to enter into meaningful plea negotiations in the first place. *Missouri v. Frye*, 2012 U.S. LEXIS 2321, *26 (U.S. Mar. 21, 2012), citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) and *Santobello v. New York*, 404 U.S. 257, 262 (1971). Accordingly, Petitioner's claim is without merit.

## J.  Ineffective Assistance of Appellate Counsel

Petitioner next claims that his appellate counsel was ineffective because appellate counsel did not raise the issues raised by Petitioner in his pro se brief in the principal brief on appeal.  As discussed above, the claims raised in the pro se brief are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Accordingly, Petitioner was not prejudiced by his counsel's failure to raise them in his brief.

## K.  Cumulative Error

Petitioner argues that the cumulated errors of his trial counsel justify habeas relief. In the Sixth Circuit, claims of cumulated trial errors are not cognizable under § 2254. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists

would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: May 3, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 3, 2012.

s/Marie E. Verlinde

Case Manager
(810) 984-3290